IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

BARRY D. LONDON,                                                                                    PLAINTIFF
ADC #088701

v.                                      3:21CV00197-DPM-JTK

BRUSH-STRODE, et al.                                                                              DEFENDANTS

**PROPOSED FINDINGS AND RECOMMENDATIONS**

**INSTRUCTIONS**

The following recommended disposition ("Recommendation") has been sent to Chief United States District Judge D.P. Marshall Jr. Any party may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objections; and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

**DISPOSITION**

I.    **Introduction**

Barry D. London ("Plaintiff") currently is incarcerated at the Wrightsville Unit of the Arkansas Division of Correction ("ADC"). Plaintiff's claims in this case arise from the time when Plaintiff was in custody at the North Central Unit of the ADC.

Plaintiff sued numerous ADC officials alleging violations of his constitutional rights. (Doc. No. 10). Plaintiff's claims against Defendants Brush-Strode, Brink, Hicks, Mendez, Jones, Landrigan, Richard, Smith, West, Schubert, Sights, Roger, Wilson, and Does have been dismissed, as have Plaintiff's official capacity claims, among other claims. (Doc. Nos. 14, 49, 63, 67, 97, 108, 130, 143, 178, 206). Certain of Plaintiff's deliberate indifference to serious medical needs

claims against Defendants Glenn, Hall, Lake, Hearyman, Murray, Peterman, and Johnson remain pending.

Defendants Marty Hearyman, Sandra Lake, Marjorie Hall, Lisa Murray, and Jacquelyn Peterman (collectively, the "Medical Defendants") have filed a Motion for Summary Judgment, Brief in Support, and Statement of Facts on the merits of Plaintiff's claims. (Doc. Nos. 227-229). On June 27, 2023, the Court directed Plaintiff to respond to the Medical Defendants' Motion within thirty (30) days, or by July 28, 2023.   (Doc. No. 230).   The Court advised Plaintiff that failure to comply with the Order would result in all of the facts set forth in Defendants' summary judgment papers being deemed admitted, or the dismissal of the action without prejudice for failure to prosecute.   (Id.)   To date, Plaintiff has not filed a response.

After careful consideration, and for the reasons set out below, the Court recommends the Medical Defendants' Motion be granted.

**II.     Plaintiff's Complaint**

The following claims survived the Medical Defendants' Motion for Summary Judgment on the issue of exhaustion and remain pending:

| Grievance | Claim Exhausted |
|---|---|
| NC-20-00798 | Plaintiff's medical restriction claim against Defendant Hearyman as to Plaintiff's April 29, 2020 encounter with Defendant Hearyman. |
| NC-20-00877 | Plaintiff's ankle, knee, and bacitracin cream claims against Defendant Hearyman as to Plaintiff's December 2, 2020 |
| NC-20-00968 | Plaintiff's knee and ankle claims against Defendant Hearyman as to Plaintiff's December 2, 2020 encounter with Defendant Hearyman |
| NC-20-00179 | Plaintiff's right-hand deformity and one-arm duty script as to Plaintiff's February 17, 2020 encounter with Defendant Lake |
| NC-20-00610 | Plaintiff's one-arm duty script as to Plaintiff encounter with Defendant Lake on July 14, 2020 |
| NC-20-00625 | Plaintiff's one-arm duty script claims as to July 14, 2020 encounter with Defendant Lake |
| NC-20-00858 | Plaintiff's back brace claims as to Plaintiff's encounters with Defendant Lake on August 25, 2020, September 14, 2020, and November 3, 2020 |

| NC-20-00877 | Plaintiff's complaints of his back and right hand as to Plaintiff's November 9, 2020 encounter with Defendant Lake |
|---|---|
| NC-20-00878 | Plaintiff's allegations of back pain regarding Plaintiff's November 3, 2020 encounter with Defendant Lake |
| NC-20-00893 | Plaintiff's medical restriction for one-arm duty and back brace claims against Defendant Lake as to Plaintiff's encounters with Defendant Lake on November 3, 2020 and November 9, 2020 |
| NC-21-00014 | Plaintiff's one-arm duty script claim against Defendant Lake as to his December 22, 2020 encounter with Defendant Lake |
| NC-20-00814 | Plaintiff's claim Defendant Hall denied Plaintiff ibuprofen for knee and back pain in October 2020 |
| NC-21-00119 | Plaintiff's denial skin cream claims as to his encounters with Defendant Hall on February 8, 2021 and February 18, 2021 |
| NC-21-00120 | Plaintiff's knee brace claim as to Plaintiff's February 10, 2021 encounter with Defendant Hall |
| NC-21-00328 | Plaintiff's denial of skin cream claim against Defendant Hall for the period of May 3 – May 18, 2021. |
| NC-21-00421 | Plaintiff's right-knee complaints and request for braces as to Plaintiff's June 16, 2021 encounter with Defendant Murray |
| NC-21-00422 | Plaintiff's pain medication claims as to his knee, ankle, and right arthritic thumb as to Plaintiff's June 16, 2021 encounter with Defendant Murray |
| NC-21-00471 | Plaintiff's skin condition claims at to Plaintiff's July 16, 2021 encounter with Defendant Murray |
| NC-21-00183 | Plaintiff's claim that Defendant Peterman denied Plaintiff ibuprofen for ankle swelling as to Plaintiff's March 25, 2021 encounter with Defendant Peterman |

(Doc. Nos. 143 at 17-18; Doc. No. 206).

### III. Summary Judgment Standard

Pursuant to FED. R. CIV. P. 56(a), summary judgment is appropriate if the record shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Dulany v. Carnahan, 132 F.3d 1234, 1237 (8th Cir. 1997). "The moving party bears the initial burden of identifying 'those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" Webb v. Lawrence County, 144 F.3d 1131, 1134 (8th Cir. 1998) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (other citations omitted)). "Once the moving party has met this burden, the non-moving party cannot

3

simply rest on mere denials or allegations in the pleadings; rather, the non-movant 'must set forth specific facts showing that there is a genuine issue for trial.'" Id. at 1135.  Although the facts are viewed in a light most favorable to the non-moving party, "in order to defeat a motion for summary judgment, the non-movant cannot simply create a factual dispute; rather, there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit." Id.

In addition, "[a]ll material facts set forth in the statement (of undisputed material facts) filed by the moving party...shall be deemed admitted unless controverted by the statement filed by the non-moving party . . . ."  Local Rule 56.1, Rules of the United States District Court for the Eastern and Western Districts of Arkansas.  Failure to properly support or address the moving party's assertion of fact can result in the fact considered as undisputed for purposes of the motion.  FED. R. CIV. P. 56(e).

## IV. Discussion

Plaintiff alleged the Medical Defendants were deliberately indifferent to his serious medical needs.  As an initial matter, the Court notes that Plaintiff has not filed a response to Defendants' Motion.  He has not controverted any material fact set forth by Defendants in their statement of undisputed material facts.  Accordingly, all material facts submitted by Defendants (Doc. No. 229) are deemed admitted.  LOCAL RULE 56.1(c); FED. R. CIV. P. 56(e).

### A.    Deliberate Indifference to Serious Medical Needs

The Eighth Amendment prohibits cruel and unusual punishment.  U.S. CONST. AMEND. VIII.  This prohibition gives rise to the government's duty to provide medical care to prisoners. "The government has an 'obligation to provide medical care for those whom it is punishing by incarceration." Allard v. Baldwin, 779 F.3d 768, 772 (8th Cir. 2015) (citing Estelle v. Gamble, 429 U.S. 97, 103 (1976)).  It follows that the "Eighth Amendment proscribes deliberate indifference to the serious medical needs of prisoners." Robinson v. Hager, 292 F.3d 560, 563

4

(8th Cir. 2002) (internal citation omitted). "A serious medical need is 'one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention.'" Schuab v. VonWald, 638 F.3d 905, 914 (8th Cir. 2011) (internal citation omitted). "Deliberate indifference may be demonstrated by prison guards who intentionally deny or delay access to medical care or intentionally interfere with prescribed treatment, or by prison doctors who fail to respond to prisoner's serious medical needs." Dulany v. Carnahan, 132 F.3d 1234, 1239 (8th Cir. 1997). To succeed on a claim of deliberate indifference to a medical need, a plaintiff must show he had an objectively serious medical need and prison officials had actual knowledge of, but deliberately disregarded, that need. See Washington v. Denney, 900 F.3d 549, 559 (8th Cir. 2018); McRaven v. Sanders, 577 F.3d 974, 981 (8th 2009).

    B.    Analysis

As mentioned above, Plaintiff did not dispute any material fact set forth by the Medical Defendants; all facts (Doc. No. 229) are deemed admitted.

    1.    **Defendant Hearyman**

Plaintiff originally complained about Dr. Hearyman's medical restrictions issued during an encounter on April 29, 2020. Dr. Hearyman entered an extensive note that does reflect work restrictions. (Doc. No. 229 at ¶ 5; Doc. No. 229-1 at 2-5). Plaintiff testified that he did not have a problem with Dr. Hearyman's treatment decisions, including medical restriction decisions, on April 29, 2020. (Doc. No. 229 at ¶ 6; Doc. No. 229-3 at 2:21-3:4).

Plaintiff also complained of an encounter with Dr. Hearyman on December 2, 2020, relating to Plaintiff's ankles and knees and to bacitracin for cuts on his skin. Per the record, Dr. Hearyman instructed plaintiff to stop using a razor. (Doc. No. 229 at ¶ 7; Doc. No. 229-1 at 13). On December 2, 2020, Dr. Hearyman instructed plaintiff to continue NSAIDS for joint pain, with

5

explanations that they would consider a change or other medications in the future if there was no improvement.  (Doc. No. 229 at ¶ 8; Doc. No. 229-1 at 13).  Dr. Hearyman also ordered x-rays of the right knee, the results of which revealed nothing more than mild degenerative changes, e.g., arthritic wear in the joints associated with aging.  (Doc. No. 229 at ¶ 9; Doc. No. 229-1 at 6; Doc. No. 229-2 at 2).  Plaintiff confirmed this care that Dr. Hearyman provided him on December 2, 2020, and testified that Mr. Hearyman was taking care of him a little bit.  (Doc. No. 229 at ¶ 10; Doc. No. 229-3 at 4:10-7:4).

The record before me does not support the conclusion that Defendant Hearyman was deliberately indifferent to Plaintiff's serious medical needs.  Plaintiff himself acknowledges no wrongdoing as to his April 29, 2020 encounter with Defendant Hearyman.  With respect to Plaintiff's remaining claims against Defendant Hearyman, Defendant Hearyman did not fail to respond to Plaintiff's serious medical needs.  Dulany, 132 F.3d at 1239.  Plaintiff's claims are more of a disagreement with treatment decisions.  As long as the care provided by Defendant Hearyman was not constitutionally deficient, Plaintiff has no right to his preferred course of treatment.  Id.

In support of their Motion, the Medical Defendants offered the Declaration of Dr. Gary Kerstein.  (Doc. No. 229-2).  Dr. Kerstein reviewed Plaintiff's medical records and determined that Defendant Hearyman's treatment of Plaintiff was medically appropriate.  (Doc. No. 229-2 at 1-2).  Plaintiff has not come forward with any evidence to the contrary.  Because Plaintiff has not come forward with any evidence to create a genuine issue of material fact in connection with Defendant Hearyman's treatment, summary judgment should be granted in Defendant Hearyman's favor.

### 2.   **Defendant Lake**

Plaintiff complained about his encounter with Defendant Lake on February 17, 2020. (Doc. No. 229 at ¶ 11).  Records reflect that Defendant Lake examined Plaintiff's right hand with deformity to the thumb and issued him a one-arm duty script for 120 days.  (Doc. No. 229 at ¶ 11; Doc. No. 229-1 at 1).  Defendant Lake noted that Plaintiff's grip strength was greater on the left than the right, so she instructed him to perform hand exercises.  (Doc. No. 229 at ¶ 11; Doc. No. 229-1 at 1).

After expiration of the one-arm duty script, Plaintiff complained about the June 14, 2020, encounter he had with Ms. Lake when she declined to renew the one-arm duty script.  (Doc. No. 229 at ¶ 13).  Defendant Lake did see him that day for multiple issues, including his request for a one-arm duty script.  (Doc. No. 229 at ¶ 13; Doc. No. 229-1 at 7).  On June 14, 2020, Defendant Lake recorded that plaintiff had never had a one-arm duty script, but this was clearly a mistake because she had issued him one in February 2020, which expired May 31, 2020.  (Doc. No. 229 at ¶ 14; Doc. No. 229-1 at 1, 7-8; Doc. No. 229-2 at 2).  On June 14, 2020, Defendant Lake objectively noted Plaintiff swinging his arms, with no guarding while he was using them to talk, and observed that he had full ROM.  (Doc. No. 229 at ¶ 15; Doc. No. 229-1 at 7).  After recording her objective assessment, Defendant Lake found that Plaintiff did not medically qualify for a one-arm duty script that day.  (Doc. No. 229 at ¶ 15; Doc. No. 229-1 at 7-8).

A patient's conditions and, thus, their needs, may change on a regular basis.  (Doc. No. 229 at ¶ 16).  Such changes often result in subsequent changes in the treatment decisions of the providers, relative to their objective findings.  (Doc. No. 229 at ¶ 16; Doc. No. 229-2 at 2).

Plaintiff next complained about Defendant Lake not prescribing him a back brace during her encounters with him on August 25, 2020, September 14, 2020, November 3, 2020, and

November 9, 2020. (Doc. No. 229 at ¶ 17). On August 25, 2020, there is nothing in Defendant Lake's objective findings to indicate a need for a back brace at that time. (Doc. No. 229 at ¶ 17; Doc. No. 229-1 at 9). On September 14, 2020, Plaintiff did not have a medical encounter with Defendant Lake; rather, she only performed a record review on that date. (Doc. No. 229 at ¶ 18; Doc. No. 229-1 at 10). Defendant did not see the patient; rather, Defendant Lake reviewed Plaintiff's scripts and found that the scripts he already he had were appropriate. (Doc. No. 229 at ¶ 18; Doc. No. 229-1 at 10; Doc. No. 229-2 at 3). Similarly, on November 3 and November 9, 2020, plaintiff only complained of generalized pain. (Doc. No. 229 at ¶ 19; Doc. No. 229-1 at 11, 12). On November 9, Defendant Lake observed Plaintiff walking into clinic and exiting, and he walked with no limp or abnormal gait. (Doc. No. 229 at ¶ 19; Doc. No. 229-1 at 12). Only in the exam room did he limp and groan. (Doc. No. 229 at ¶ 19). No abnormal findings were noted upon objective exam relating to his back, knees, and right hand. (Id.). Plaintiff had equal grip strength. (Id.) Nothing in Defendant Lake's notes reflect a need for Plaintiff to have been issued a back brace or a one-arm duty script. (Doc. No. 229 at ¶ 19; Doc. No. 229-2 at 3).

Plaintiff complained about Defendant Lake denying him a one-arm duty script during her encounter with him on December 22, 2020. (Doc. No. 229 at ¶ 20; Doc. No. 229-1 at 14). Plaintiff is noted as stating that his various areas of pain – ankles, hand, and back – were better since he had been moved to a different barracks. (Doc. No. 229 at ¶ 20; Doc. No. 229-1 at 14). Plaintiff's ibuprofen prescription was refilled, but there is no reference to any scripts being addressed. (Doc. No. 229 at ¶ 20; Doc. No. 229-1 at 14).

Here again, Dr. Kerstein reviewed Plaintiff's medical records and determined that Defendant Lake's treatment of Plaintiff was medically appropriate. (Doc. No. 229-2 at 2-3). And the record before me does not support the conclusion that Defendant Lake failed to respond to Plaintiff's serious medical needs. Dulany, 132 F.3d at 1239. Plaintiff has not come forward

8

with any evidence to the contrary. Because Plaintiff has not come forward with any evidence to create a genuine issue of material fact in connection with Defendant Lake's treatment, summary judgment should be granted in Defendant Lake's favor.

      3.     **Defendant Hall**

Plaintiff complained that HSA Marjorie Hall denied him ibuprofen in October 2020 for knee and back pain. (Doc. No. 229 at ¶ 21). From the record, Plaintiff had more than enough ibuprofen for his mild arthritis and other subjective complaints of swelling or pain. (Doc. No. 229 at ¶ 21; Doc. No. 229-1 at 20-22; Doc. No. 229-2 at 3). Plaintiff was only to take that medication as needed (PRN), not three times a day every day. (Doc. No. 229 at ¶ 21; Doc. No. 229-1 at 20). Further, there was no lapse in plaintiff's receipt of ibuprofen. (Doc. No. 229 at ¶ 22). Even if Plaintiff was to take the medication exactly as prescribed, not as needed, he received a 30 day supply on September 14, 2020, and again on October 13, 2020. (Doc. No. 229 at ¶22; Doc. No. 229-1 at 20, 22; Doc. No. 229-2 at 3). There was no gap in receipt. (Doc. No. 229 at ¶ 22; Doc. No. 229-2 at 3-4).

Plaintiff complained about Defendant Hall in relation to his February 8 and February 18, 2021, receipt of his skin creams. (Doc. No. 229 at ¶ 23). On February 4 and February 18, 2021, Plaintiff was given absorbase (Vaseline). (Doc. No. 229 at ¶ 23; Doc. No. 229-1 at 23). During a sick call on February 6, 2021, Plaintiff was given tubes of bacitracin, tolnafate cream, and clotrimazole cream. (Doc. No. 229 at ¶ 23; Doc. No. 229-1 at 15-16). Plaintiff was given his prescription of clotrimazole February 18, 2021. (Doc. No. 229 at ¶ 23; Doc. No. 229-1 at 24). Plus, Plaintiff was mistakenly given a double quantity of Clotrimazole on December 31, 2020, so he was not short of the medication. (Doc. No. 229 at ¶ 23; Doc. No. 229-1 at 24; Doc. No. 229-3 at 4.) Plaintiff admitted during his deposition testimony that he received his creams in February 2021. (Doc. No. 229 at ¶ 24; Doc. No. 229-3 at 8:2-9:13).

9

With regard to Plaintiff's complaint that on February 10, 2021, Defendant Hall was to check about his knee brace, there is nothing relating to him being seen about a knee brace on or around that date. (Doc. No. 229 at ¶ 25; Doc. No. 229-2 at 4). Plaintiff refused a medical visit on February 13, 2021. (Doc. No. 229 at ¶ 25; Doc. No. 229-1 at 17). Defendant Hall would have no authority, per protocol, to give plaintiff a knee brace without a prescription. (Doc. No. 229 at ¶ 25; Doc. No. 229-2 at 4). No provider entered a new order for him to receive a knee brace/sleeve in February 2021. (Doc. No. 229 at ¶ 26; Doc. No. 229-2 at 4). Because Defendant Hall would not have been permitted to just give Plaintiff another sleeve/brace, she did nothing wrong. (Doc. No. 229 at ¶ 26; Doc. No. 229-2 at 4).

Defendant Lake saw Plaintiff on May 3, 2021. (Doc. No. 229 at ¶ 27; Doc. No. 229-1 at 26). During that visit, Defendant Lake determined that Plaintiff had "no skin conditions at [that] time requiring any creams or ointments." (Doc. No. 229 at ¶ 27; Doc. No. 229-1 at 26). Defendant Hall was not a provider and could not have prescribed Plaintiff creams that Defendant Lake, the provider, had discontinued. (Doc. No. 229 at ¶ 27; Doc. No. 229-2 at 4).

Plaintiff acknowledged that Defendant Hall was not a provider who could have prescribed a knee brace, and that she could not have prescribed him the creams a provider had. Defendant Hall did give Plaintiff stock creams to meet his needs. Further, Dr. Kerstein concluded—after reviewing the medical records—that Defendant Hall's care of Plaintiff was appropriate. (Doc. No. 229-2 at 3-4). Plaintiff has not forward with any evidence to the contrary. Accordingly, summary judgment should be granted in Defendant Hall's favor.

### 4. Defendant Murray

Plaintiff complained about a June 16, 2021, encounter with Defendant Murray regarding his right knee and his request for braces, pain medication/ibuprofen for his knee, ankle, and right arthritic thumb, and relating to his skin condition. (Doc. No. 229 at ¶ 28; Doc. No. 229-1 at 18-

19; Doc. No. 229-2 at 4-5). Defendant Murray specifically noted no visible swelling to either knee, steady gate when ambulating into and out of the infirmary, and no noted need for knee braces. (Doc. No. 229 at ¶ 28; Doc. No. 229-1 at 19). Because Defendant Murray did not note swelling, there was no need for ibuprofen. (Doc. No. 229 at ¶ 28; Doc. No. 229-2 at 5).

Defendant Murray is an RN and not a provider; she was not able to prescribe braces. (Doc. No. 229 at ¶ 30; Doc. No. 229-2 at 5). Plaintiff conceded this at his deposition. (Doc. No. 229 at ¶ 31; Doc. No. 229-3 at 10:3-14:7). Defendant Murray specifically informed plaintiff that she could not "give him back" all of the cream and braces that were not renewed by the provider. (Doc. No. 229 at ¶ 30; Doc. No. 229-1 at 18-19). Defendant Murray did give Plaintiff some stock creams for two rash areas. (Doc. No. 229 at ¶ 30; Doc. No. 229-1 at 18-19). Plaintiff had Tylenol on-person prescribed for pain. (Doc. No. 229 at ¶ 29; Doc. No. 229-1 at 29). Plaintiff also had nortriptyline, which may be used off label for chronic pain. (Doc. No. 229-1 at ¶ 29; Doc. No. 229-1 at 30).

Plaintiff acknowledged that Defendant Murray was not a provider who could have prescribed a knee brace, and that she could not have prescribed him the creams a provider had. Defendant Murray did give Plaintiff stock creams to meet his needs. Further, Dr. Kerstein concluded—after reviewing the medical records—that Defendant Murray's care of Plaintiff was appropriate. (Doc. No. 229-2 at 4-5). Plaintiff has not forward with any evidence to the contrary. Accordingly, summary judgment should be granted in Defendant Murray's favor.

### 5. Defendant Peterman

Plaintiff testified at his deposition that he agreed to dismiss Defendant Peterman from this lawsuit. (Doc. No. 229 at ¶ 2; Doc. No. 229-3 at 15:16-15:21). Plaintiff does not dispute that he intended to dismiss his claims against Defendant Peterman.

11

Where, as here, defendants have moved for summary judgment, Plaintiff "was required 'to discard the shielding cloak of formal allegations and meet proof with proof by showing a genuine issue as to a material fact.'" Fatemi v. White, 775 F.3d 1022, 1046 (8th Cir. 2015) (internal citation omitted). Plaintiff has not, however, met proof with proof to establish facts in dispute that would preclude summary judgment in the Medical Defendants' favor. Wilson v. Miller, 821 F.3d 963, 970 (8th Cir. 2016) (allegations must be substantiated with sufficient probative evidence); Bolderson v. City of Wentzville, Missouri, 840 F.3d 982, 986-87 (8th Cir. 2016) (noting plaintiff's duty to meet proof with proof in affirming summary judgment in defendant's favor). Accordingly, Defendants' Motion should be granted.

If the Court adopts this Recommendation in addition to the pending Recommendation that the ADC Defendants' Motion for Summary Judgment be granted (Doc. No. 232), there will be no pending claims in this action. As such, it is also recommended that Plaintiff's Complaint be dismissed.

### V.  Conclusion

IT IS, THEREFORE, RECOMMENDED that:

1.   The Medical Defendants' Motion for Summary Judgment (Doc. No. 227) be GRANTED;

2.   Plaintiff's related claims against the Medical Defendants be DISMISSED with prejudice; and

3.   Plaintiff's Complaint, as amended, be DISMISSED.

Dated this 1st day of August, 2023.

_____
JEROME T. KEARNEY
UNITED STATES MAGISTRATE JUDGE